CHARLES A. ROE ET AL., *Appellants,* v. MARY LUCILE ROE, AS EXECUTRIX, *Appellee.*

Division A.

Opinion Filed March 14, 1928.

*Leitner & Leitner,* for Appellants;

*Mabry, Reaves & Carlton,* for Appellee.

SMITH, Circuit Judge:

The designation adopted by counsel for the parties to the appeal by referring to the parties hereto as complainant and defendants, respectively, as in the court below, will be followed in this Court.

It is alleged that Alfred Roe (the decedent) had owned certain real estate in his life time and conveyed the same to the defendant Charles A. Roe, taking back a series of promissory notes executed by Charles A. Roe to evidence the unpaid purchase price and a mortgage on the property to secure the payment of the notes; that the mortgagee, for the purpose of accommodating the mortgagor (Charles A. Roe) satisfied the mortgage of record; that subsequently said Charles A. Roe and wife executed and delivered another mortgage to secure the unpaid notes, which said mortgage was never recorded but was kept in the family safe,

as were the notes, and she believes the same to have been destroyed or concealed by said Charles A. Roe; that upon her qualification as executrix of the will of said Alfred Roe she called upon the defendant Charles A. Roe for the notes and was informed by him (also by the defendant Arthur I. Roe) that several months before the death of Alfred Roe he had turned the notes over to Arthur I. Roe to be held by him and delivered in case of death of the payee, Alfred Roe, and following such instructions Arthur I. Roe had in fact delivered said notes to Charles A. Roe, who now claims to have destroyed the same; the complainant demanded payment of the note, 7th of the series and becoming due October 2, 1923, but he refused payment, and she, too, demanded delivery and possession of the remaining unpaid notes of the series, which he refused, claiming to have destroyed same and averring that it was his father's intention that the notes should be given to him upon the death of his father; that among the papers of the decedent were purported copies of five of the notes which she delivered to be true copies and she had filed a common law action to recover upon the seventh note of the series, but the defendant filed a plea denying execution of the note as declared upon and she is not able to prove the issue there made. In her bill the complainant offers to dismiss the common law action.

Edward G. Roe is alleged to have an interest in the real estate, which was acquired with knowledge on his part of the entire transaction between his father Alfred Roe and his brother Charles A. Roe in reference to the notes and mortgages. The bill further alleges that there is indebtedness against the estate of Alfred Roe, which the complainant will be unable to pay until she collects the notes.

A demurrer filed by the defendants to the bill was over-

ruled and the defendants appealed, assigning the ruling upon the demurrer as error.

The bill seeks to have a lien declared securing the notes, either the establishment of the second mortgage or re-establishment of the original mortgage or a vendor's lien; a discovery as to the disposition of the notes and mortgage and all facts and circumstances pertaining to same; the establishment of the notes as valid and binding obligations of Charles A. Roe and requiring the past due notes to be paid.

The only point raised by the demurrer and relied upon by counsel for the defendants is that the complainant has a complete and adequate remedy at law.

It is first observed that the defendants in their brief state that "when the trial judge considered this demurrer he deemed this matter to have been originally recognized as a chancery matter, and that while the complainant was the executrix of the estate of Alfred Roe, she should have a right to resort to a court of chancery for her assistance in collecting the accounts of the estate of Alfred Roe." Counsel for the complainant have not contradicted the statement, but have offered their authorities which they contend support the ruling on the demurrer on that proposition of law.

This Court in the case of Opitz v. Morgan, held as follows:

"Under the Constitution of 1868, Art. 6, Sec. 8, as amended in 1875, which gave circuit courts 'original jurisdiction in all cases in equity' and 'appellate jurisdiction of matters pertaining to the probate jurisdiction and the estates and interests of minors in the county courts,' it was held that a court of equity has concurrent jurisdiction with the probate court over the administration of the assets of deceased persons, and the probate court may remove an administrator, but it cannot grant the same relief as a

court of chancery (quoting Sanderson's Admr. v. Sanderson, 17 Fla. 820; text 831).

"Under the present Constitution the circuit court * * * have exclusive original jurisdiction in all cases in equity *. * * and supervision and appellate jurisdiction of matters arising before county judges pertaining to. their probate jurisdiction, or to the estates and interests of minors." (Referring to Ritch v. Bellamy, 14 Fla. 542); Opitz v. Morgan, 68 Fla. 469 (67 So. 67.)

It was also held in the case of Griffin v. Fries, 23 Fla., page 176 (text) "the bill must lay some ground beside the mere loss of a title-deed to justify a prayer for relief, as that the loss obstructs the complainant's rights at law, or leaves him exposed to undue perils in the future assertion of such rights."

The case of Griffin v. Fries, *supra*, was cited in that of Burleson v. French, 104 So. 860, in which the court used this language: "The bare allegation that the notes and contract were lost affords no ground of equitable relief, while a judgment against the makers or a return of the property is relief obtainable at law."

In the case of Ritch v. Bellamy, *supra*, is found the following statement, by this Court, to-wit: "When we recollect that the settlement of estates is the fruitful source of accident, mistake, trust and fraud, and that the jurisdiction of the county court in this matter is for the most part limited to powers granted by statute, it must be clear as a general proposition that a court of equity cannot be limited in its jurisdiction, or prevented from its exercise in such matters, simply because an administrator has qualified and is in process of settlement of the estate in the county court. It must be conceded, however, that in the absence of special equities, the county and circuit courts. have concurrent jurisdiction in the matter of the settlement of administra-

tions and that in such cases the tribunal which first takes cognizance of the matter in controversy will retain it to the exclusion of the other, unless for some special reason it is made to appear that the probate court cannot administer adequate and complete relief between the parties.''

''In this complainant creditors seek to surcharge and falsify the accounts of the administrator. They charge him with delinquencies and seek to recover for alleged waste and conversion of assets. These are unquestionably the proper subjects matter of equity jurisdiction.''

Although all cases cited in the briefs have been carefully examined and a much larger number sought out by the writer in search for the law of this case, yet no case has been found quite similar to the instant case, in which a court has held that equity has jurisdiction because of the action being brought by the representative of an estate. The result of such investigation is the conviction that the bill cannot be maintained on account of the capacity in which the complainant sues for the particular relief sought and that if it is to be maintained it must be regardless of the fact that the complainant is the executrix of the will and as such is seeking such relief as in this bill prayed for and based upon such allegations of facts.

The Court will not proceed to consider whether there is equity in the bill or the complainant has a complete and adequate remedy at law. A remedy at law in order to preclude a resort to chancery must be ''as practical and as efficient to the ends of justice and its prompt administration as the remedy in equity.'' Or, stated in another way: ''The jurisdiction in equity attaches unless the legal remedy, both in respect to the final relief and the mode of obtaining it, is as efficient as the remedy which equity would confer under the same circumstances.'' Jones v. Stearns, (Vt.) 122, Atl. 116, 31 A. L. R. 658.

This Court has clearly stated the rule to the effect that "equity will not take jurisdiction, where there is a full, adequate and complete remedy at law; but where the remedy at law is not full, complete and adequate, or where complete relief is doubtful, and a more ample and appropriate remedy may be thereby afforded, equity will take cognizance, and give relief, if it can be done in accordance with recognized principles of chancery jurisdiction." Rentz v. Granger *et al.*, 64 Fla., 445, 60 So. 231, citing Carter v. Bennett, 6 Fla. 214, and Gordon v. Simonton, 10 Fla. 179.

In addition to other relief complainant seeks a discovery and the establishment of a lien in her favor securing all of the notes.

While as above indicated, the Court does not agree with the reason of the learned chancellor for his decision in overruling the demurrer as alleged by counsel, yet his ruling being correct will be sustained.

"A correct ruling of the trial court will not be disturbed because of erroneous or wrong reasons which may have been given therefor, as it is with the ruling itself and not with the reasons given therefor, with which an appellate court is concerned." Warren v. Warren, 66 Fla., 138, (63 So. 726).

Affirmed.

PER CURIAM.—The record in this cause having been considered by this Court, and the foregoing opinion prepared under Chapter 7837, Acts of 1919, adopted by the Court as its opinion, it is considered, ordered and decreed by the Court that the decree of the Circuit Court in this cause be, and the same is hereby affirmed.

ELLIS, C. J., AND WHITFIELD, TERRELL, STRUM; BROWN AND BUFORD, J. J., concur.