TALIFERRO, ADMINISTRATOR *de bonis non* OF POLLY THOMPSON v JOHN Y. BASSETT AND WIFE.

SAME v. ROBERT J. MANNING AND WIFE.

SAME v. JAMES MANNIG AND WIFE.

1. The Orphans' Courts of this State have not power to cite an executor or administrator to make settlement, unless he derives his appointment from the Court issuing the citation.

2. It must appear on the record, that the Court has jurisdiction.

3. The voluntary appearance of the party will not cure the defect.

4. An executor or administrator of an executor or administrator, cannot be sued at law, for the devastavit of the former executor or administrator; in such a case, resort must be had to a Court of Chancery.

5. Whether the sureties of an executor, are liable for assets remaining in specie, at his death, unadministered, and which pass into the hands of succeeding representatives of the estate—*Quere.*

Error to the County Court of Madison.

THIS was a proceeding in the Orphans' Court of Madison county, by the defendants in error, and others, legatees of Asa Thompson, deceased, against the plaintiff in error, as administrator *de bonis non* of Polly Thompson, deceased, who was executrix of Asa Thompson.

The record shews, that in May, 1828, Polly Thompson applied to the Orphans' Court of Madison county, and obtained letters testamentary on the estate of Asa Thompson, deceased.

At May term, 1838, of the Orphans' Court of Madison, on motion of the defendants in error, and the other legatees of Asa Thompson, it was ordered, that Benjamin Taliaferro, administrator *de bonis non*, of Polly Thompson, with the will annexed, be cited to be and appear at this Court, and at this place, to-morrow, to shew cause why he shall not settle the administration of the said Polly, on the estate of the said Asa Thompson, deceased. Taliaferro having appeared in obedience to the citation, and filed his account, the Court appointed a time for the final settlement, and directed publication to be made.

At the time appointed, Taliaferro, the administrator *de bonis non*, appeared and settled the administration of Polly Thompson on the estate of Asa Thompson, deceased; which settlement, by consent of all parties interested therein, was ordered to be recorded, and thereupon the Judge of the County Court proceeded to render judgment in favor of each of the legatees, for their respective shares against the plaintiff in error, administrator, &c. of the goods and chattles of Polly Thompson in his hands not administered.

On the second Monday in January, 1840, on the application of the defendants in error, a citation issued to the plaintiff in error, "now of Marengo county," to appear on the second Monday of February next after, to shew cause why the applicants should not have judgment and execution against him for their distributive share of the balance due from him as administrator of the estate of the said Asa Thompson, deceased, on settlement of his said administration heretofore made.

Upon the return of this citation, the following order was made. This day came the parties, &c. &c. and said defen-

dant, shewing no sufficient cause why execution shall not issue against him for said distributive share, &c. It is therefore considered by the Court, that said plaintiffs recover against defendants, said sum, &c., and that execution for the same be awarded, to be levied of the proper goods and chattels of the estate of the said Polly Thompson, in the hands of the said administrator to be administered.

Execution having issued accordingly, was returned by the sheriff of Marengo county, " no property of the estate of Polly Thompson, deceased, found in the hands of Benjamin Taliaferro, administrator of said estate."

From the judgment thus rendered, the administrator *de bonis non*, prosecutes this writ of error, and for causes of error, assigns,

1. The record shews that the plaintiff in error was the administrator *de bonis non*, with the will annexed of Polly Thompson, deceased, who was the executrix of Asa Thompson, and the Court had no power to take an account from him of the administration of Asa Thompson, by his executrix Polly Thompson.

2. The record does not shew that the plaintiff in error was appointed administrator *de bonis non*, with the will annexed of Polly Thompson, by the Court below, and therefore the said Court had no jurisdiction over him, or authority to take account or render the judgment against him, as found in the record.

3. The said Court erred in taking the account in favor of the defendants and rendering judgment in their favor because it had no jurisdiction of the plaintiff in error, or authority to take and settle the accounts with the plaintiff in error, or of what was due to the defendants in error.

4. The Court erred in rendering the decree of the 20th July, 1838, for want of judisdiction.

5. In rendering the decree of the 10th February, 1840, for the same reason.

6. In rendering the last judgment or decree, because there was a previous judgment for the same distributive share.

7. Because the last judgment was against the plaintiff in his individual character.

8. Because the two judgments are inconsistent with each other.

Taliaferro, adm'r *v.* Bassett and wife, and Manning and wife.

HOPKINS, for plaintiff in error—insisted, that unless the Orphans' Court of Madison, had appointed the plaintiff in error, *administrator de bonis non,* it had no jurisdiction to call upon him to settle an account, or to render judgment against him; and that this fact must appear affirmatively on the record, and that as the County Court was one of special and limited jurisdiction, the consent of the plaintiff in error, if that appeared, would not confer jurisdiction on the court; 4 Johns. Ch. 410; 2 Cowen, 401; 6 ib. 221, 224; Aik. Dig. 248, § 16, 17: ib. 182, § 27; ib. 252, § 37, 39, 40.

That the record shews that Polly Thompson, as executrix of Asa Thompson, deceased, wasted the assets of her testator—and that without a statute altering the common law, the plaintiff in error is not responsible for the devastavit. 2 Williams on Executors, 1064, 1235; and that the only remedy in such a case, is in chancery. 2 Ch. cases, 216; 2 W'ms on Ex. 1064, note.

If the Court had jurisdiction, it could not render such a decree as this. 1 Paige, 537; 5 Rand. Rep. 51, 76.

ROBINSON, contra—maintained that the Court had jurisdiction; that the statutes of this State, gave the Court plenary jurisdiction over this subject. That as the executrix of Asa Thompson, received her letters testamentary from the Orphans' Court of Madison, the Court had jurisdiction over the principal subject, and that would draw after it all incidents and accessories. But that at all events, the consent of the plaintiff in error, was a waiver of the irregularity, if any existed. He cited Aik. Dig. 248, § 16; 250, § 23; 2 Greenl. 75; 6 Mass. Rep. 390; Toller on Ex. 492; Burns Ec. Law, 427; 1 Paige Ch. 540; 1 Penn. Rep. 282; 2 Eng. Ec. Rep. 56, 60, 283, 323; 6 Cow. 224; 4 Johns. Ch. 410; 2 Bac. Ab. 172; 14 Wend. 48; 3 Porter, 58.

ORMOND, J.—The plaintiff in error is the administrator *de bonis non,* with the will annexed of Polly Thompson, who was executrix of Asa Thompson, deceased, and was cited to appear in the Orphans' Court of Madison county, at the instance of the heirs of Asa Thompson, to settle the administration of Polly Thompson, on the estate of Asa Thompson. He appeared voluntarily, as the record recites, and an account and

674 ALABAMA.

Taliaferro, adm'r *v.* Bassett and wife, and Manning and wife.

settlement was made, and judgment rendered against him in favor of each of the heirs, to be levied of the goods and chattels of Polly Thompson, in his hands. It does not appear from the record, that the plaintiff in error was appointed by the Orphans' Court of Madison, and the first question is whether the Court had jurisdiction.

The power of the County Court in matters confided to its charge, is certainly plenary; it is nevertheless clear that it is a Court of special and limited jurisdiction, and can exercise no power which is not conferred on it by statute. By the grant of letters testamentary, or letters of administration, it acquires jurisdiction both over the subject and person, and may compel obedience to its mandates; but this is a power which no other County Court could exercise; from the nature of the case, it is exclusive, and such was evidently the intention of the legislature, in the various acts on this subject. Such has also been the interpretation of similar laws in other States as shown in the cases cited: see Dakin v. Hudson, 6 Cow. 224; Seymour v. Seymour, 4 Johns. Chan. 210.

As this is a Court of limited jurisdiction, every thing necessary to give the Court jurisdiction, should appear on the record; it must be shown affirmatively that the Court has power to act. Nor will it avail, that the party appeared voluntarily and submitted to the judgment of the Court. It is a doctrine well settled, that consent will not confer jurisdiction.

If however, the Court had jurisdiction by having appointed the plaintiff in error, this proceeding could not be sustained at common law; an executor or administrator of an executor or administrator could not be sued for a debt due from their testator or intestate, notwithstanding such executor or administrator may have wasted or converted the goods of the first testator or intestate, because the act of the executor or administrator, being a devastavit, was a *tort*, and there was no privity between them, and in such cases resort was had to a Court of chancery, which granted the relief that could not be obtained at law. Price v. Morgan, 2 Chan. Cases, 172; 2 Williams on Ex. 1234.

This defect has been remedied in England, by the passage of the acts of the 30 Ch. 2; and 4 and 5 William and Mary, which provide that such second executors or administrators

JANUARY TERM, 1842.        675

Taliaferro, adm'r *v*. Bassett and wife, and Manning and wife.

shall be chargeable in the same manner as the first executor or administrator might have been.   In this State, no statute corresponding to the English statutes just cited, has been passed, and the matter therefore stands as it did at common law.

The plaintiff in error, as *administrator de bonis non* of Polly Thompson, became entitled only to such portion of her personalty as remained in *specie*, unadministered by her former representative, of which although the record is silent, it must be presumed she had, and to the extent of the assets thus received by him, he is alone answerable.   Chamberlain, administrator v. Bates, administrator, 2 Porter, 550; Wernich v. McMurdo, 5 Rand. 51.   Whether any thing came to his hands, does not appear from the record, nor was he cited to settle his own administration of the estate of Polly Thompson, but to settle the administration of Polly Thompson, of the estate of Asa Thompson, and that was the settlement actually made; and for the amount for which she was found indebted to each of the heirs of Asa Thompson, judgment was rendered against him, to be satisfied from the goods of Polly Thompson, in his hands to be administered.   At a subsequent term of the Court, a citation issued to him, to shew cause why the applicants should not have judgment and execution against him for their distributive share of the balance due from him *as administrator of the estate of Asa Thompson*, and upon the return thereof, judgment was recovered and execution directed to issue and be levied on the goods and chattels of Polly Thompson in his hands to be administered.   This execution issued and was returned—*no property found.*

This statement shows very conclusively that the attempt here is to recover of the plaintiff in error for the devastavit of Polly Thompson, in the administration of the estate of Asa Thompson, which not being provided for by statute, can only be effected in chancery, where the liabilities of the successive representatives of Asa and Polly Thompson and of their sureties can be adjusted.

Although the estate of Polly Thompson is doubtless primarily liable for the effects of Asa Thompson, changed or converted by her during her executorship, it is very clear that the bond executed by her on obtaining letters testamentary must stand as a security for the effects so changed or converted by

her during her administration. Whether her sureties in the bond would also be responsible for the assets of Asa Thompson, which remained at her death, in specie unadministered, and which passed into the hands of the administrator *de bonis non* of Asa Thompson—or which may have come into the hands of the first executor of Polly Thompson, if one was appointed and qualified, it would not be proper now to anticipate: all these different persons, who at different times, had the administration of the estates of Asa and Polly Thompson, would be proper and necessary parties to the bill, if one is filed, that the relative rights and responsibilities of each might be adjusted in one suit.

Let the judgment of the Court below be reversed.